AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JOHN DYLAN CHRISTY | ) | Case No. 13-8303-DLB |
| LINDSAY PATRICIA WEBER | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

FILED by _____ D.C.
JUN 17 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  6/8/13 - 6/14/13  in the county of  PALM BEACH  in the  SOUTHERN  District of  FLORIDA , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC Secs. 371, 922(a)(6), 922 (g)(1), 922(g)(3), 924(a)(1)(A), 924 (a)(2), 924(c), and 2 | Defendants conspired to make false statements of a federally licensed firarms dealer material to the lawful disposition of a firearm; false statements in records required to be maintained by ATF; Defendant CHRISTY did knowingly possess one or more firearm(s) having previously been convicted of an offense punishable by imprisonment for a term exceeding one year; Possession of firearm by user of controlled substances; Defendants knowingly carried firearms in connection with drug trafficking activity |
| 21 USC Secs 841(a)(1), 841(b)(1) (C) | Defendants knowingly and intentionally possessed with intent to distribute controlled substances, to wit, heroin and cocaine |

This criminal complaint is based on these facts:
PLEASE SEE AFFIDAVIT ATTACHED

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SARA CONNORS, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  06/17/2013

_____
*Judge's signature*

City and state:  WEST PALM BEACH, FLORIDA     DAVE LEE BRANNON, U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT
## Case No. 13-8303-DLB

Your affiant, Sara Connors, first being duly sworn does hereby depose and state as follows:

1. I am an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been since 1999. Some of my responsibilities include investigating violations of federal law, including violations of the Gun Control Act (Title 18 United States Code, Chapter 44). This affidavit is based upon your affiant's personal knowledge, review of reports, and information obtained from other law enforcement officials and civilians. This affidavit does not contain every fact of this investigation, only the necessary information to support probable cause.

2. On June 8, 2013, your affiant and other law enforcement agents were working in an undercover capacity at the West Palm Beach Gun Show, which is located in Palm Beach County and the Southern District of Florida. PBSO Agent Robbie Bronson received information from a federal firearms dealer that a straw purchase of firearms was just attempted at his vendor table. The dealer explained that the female, later identified as Lindsay WEBER, was attempting to purchase firearms on behalf of the two males she was with. The dealer pointed WEBER and the two males (one who was later identified as John CHRISTY) out to Agent Bronson.

3. At this time, ATF Agents and PBSO Detectives, working in an undercover capacity, began conducting surveillance on WEBER and CHRISTY. ATF Task

Force Officer (TFO) Silva followed WEBER, CHRISTY, and the unidentified male into the parking lot, where they split up. WEBER and CHRISTY then re-entered the gun show.

4. Your affiant then observed WEBER and CHRISTY at a vendor table with the name "The Tactical Store." S/A Connors observed WEBER at the table filling out the ATF F 4473 while CHRISTY sat next to and watched. Your affiant then observed CHRISTY handle two handguns that were on the display table. As WEBER was filling out the forms, your affiant observed CHRISTY hand an unknown amount of US Currency to the firearms dealer for the sale.

5. ATF Resident Agent in Charge (RAC) Robert Shirley was also working in an undercover capacity at the Palm Beach County Gun Show. RAC Shirley overheard the firearms dealer telling WEBER and CHRISTY that the firearm would not be available until after 5 p.m. on Friday. Your affiant knows that it is a Palm Beach County Ordinance that the transfer of a handgun to an individual that is not a concealed weapons permit holder is five business days. RAC Shirley then observed the firearms dealer handing the change from the sale in an unknown amount of US Currency back to CHRISTY. CHRISTY was also observed folding the firearms receipt in half as he stood at the vendor table.

6. After WEBER and CHRISTY completed the firearms purchase, they were followed by undercover agents into the parking lot. PBSO Sgt. Michael Custer observed WEBER and CHRISTY meet with two other unknown white males in the parking lot before departing in their white Honda Civic, FL license plate

number AXF1170. Sgt. Custer observed WEBER as the driver and CHRISTY as the passenger as the vehicle exited the gun show.

7. Your affiant conducted an interview with "MF" an employee at Shoot Straight, the firearms licensee that denied the original purchase at the gun show. MF said that he was helping two males with firearms purchases. He described them both as white males, one was thin and one was heavier set. The thinner male (believed to be CHRISTY) was asking MF about a Glock model 23, to include price and magazine capacity. The heavier set male (who is unknown at this time) was asking about a Glock model 33. MF said that both males were negotiating price for a while, and then they left for about an hour before returning.

8. Once the males returned to the Shoot Straight vendor table, they confirmed the purchase price (of both Glocks) with MF, and then a young white female (WEBER) walked up with her driver's license. MF said that he had not spoken to the female once during all the negotiations about the firearms, and that she did not ask any questions whatsoever. MF questioned the males about who the guns were for, and they responded that they were for her. MF told them that he knew the guns were not for her, and that he could not complete the sale, as it was a "straw purchase" and it was illegal. The two males and the female then left the Shoot Straight Vendor table, and MF notified his manager right away.

9. Your affiant conducted an interview with "NP" and "SP", the owner and employee of Boca Arms, a federally licensed firearms dealer in Boca Raton, Palm Beach County, Southern District of Florida. SP said that he received transfer paperwork at the Palm Beach County Gun Show from the Tactical Store for the

3

transfer of a Glock model 27, .40 caliber pistol, SN VCW030. The transfer had a corresponding ATF Form 4473 in the name of Lindsay Patricia WEBER. Your affiant notes that criminal records checks (as further described below) identified CHRISTY as a previously convicted felon.

10. NP conducted the background check required for firearms purchases on Lindsay WEBER through the Florida Department of Law Enforcement (FDLE) to determine if she was able to purchase the firearm, which was passed. NP then placed a call to WEBER at the phone number which was provided on the transfer paperwork. A male voice answered the phone, and NP asked to speak to Lindsay WEBER. The male transferred the phone to a female who identified herself as Lindsay WEBER. NP told WEBER that she passed the background check and that she could pick up her firearm on Friday June 14, after 5 p.m. WEBER told NP she would be there to pick up her firearm.

11. On June 14, 2013, ATF Agents and PBSO Agents were conducting surveillance at Boca Arms in Boca Raton, FL. At approximately 4:50 p.m., your affiant observed WEBER enter Boca Arms. At this time, ATF S/A Trenschel were inside the store, acting in an undercover capacity as a store employee. S/A Trenschel reviewed the form with WEBER before she signed it for a final time, completing the firearms transaction. S/A Trenschel asked WEBER if she needed any help with the firearm, and WEBER told him she did not need any help because she has two additional firearms. The ATF Form 4473 requires individuals to complete their current resident address, to which WEBER filled in "1913 Moor

4

Road Lake Worth, FL". Your affiant knows that this is the same address that is on WEBER's Florida Driver's License.

12. While WEBER was in the store, TFO Silva observed CHRISTY and an unknown male parked in the southwest corner of the parking lot. CHRISTY was the front seat passenger and the unknown male (who was later identified as "SS") was the driver. At approximately 5:00, ATF RAC Shirley observed WEBER exit the business and approach the vehicle before returning to the business. After completing the sale, WEBER returned to the vehicle, which then proceeded North on Federal Highway.

13. ATF and PBSO Agents then conducted followed the vehicle to I-95 where it proceeded Northbound. The vehicle was traveling at a high rate of speed and was continually switching lanes before exiting at Linton Blvd, where it was followed by surveillance vehicles. The vehicle then pulled into an industrial complex where your affiant observed WEBER, CHRISTY, and "SS" exit the vehicle and proceed on foot. Your affiant then observed the vehicle, now driven by WEBER, exit the industrial complex. Your affiant knows that WEBER has a suspended driver's license and also an active state warrant for a failure to appear for driving on a suspended license. Your affiant also observed CHRISTY in the front passenger seat and SS in the rear passenger seat.

14. Agents continued the surveillance Northbound on I-95 to Lantana Road, Palm Beach County, Southern District of Florida, where a vehicle stop was initiated. All three occupants were removed from the vehicle and all three were then interviewed by Agents. Your affiant placed WEBER in the rear passenger seat of

her government vehicle for questioning. Before the questioning began, WEBER made the following spontaneous utterance, "Cause of these stupid fucking boys, I'm gonna get arrested and cuffed".

15. Your affiant advised WEBER of her <u>Miranda</u> rights and then conducted an interview with WEBER. During the interview, WEBER told your affiant the following: She is a habitual drug user and smokes marijuana 4-5 times per day, every day. She also goes to the methadone clinic on a daily basis because she was addicted to oxycodone at one time. WEBER could not give S/A Connors an address, and said that she is between houses right now. WEBER added that she has not lived at the Moor Street address that she wrote on her ATF Form 4473 in about six months. WEBER says that she is the girlfriend of John CHRISTY and they have been together for several years. She knows that CHRISTY is a convicted felon and that he is not allowed to possess firearms due to his criminal history. WEBER said that she went to the Gun Show with CHRISTY, SS, and another male over the weekend. SS asked WEBER to purchase a firearm for him, and CHRISTY (who is a close friend of SS) explained to her what to do. WEBER recalled that the first firearms dealer they attempted to purchase firearms from turned the sale down and they then went outside where SS handed either her or CHRISTY money to complete the sale. She then re-entered the Gun Show with CHRISTY where she purchased the Glock model 27 .40 caliber pistol. WEBER could not recall if she paid with the money that SS gave them or if CHRISTY did.

16. WEBER added that on the morning of June 14, 2013, she was asleep alongside CHRISTY, when SS called and said he was downstairs and ready to go pick up the firearm. WEBER. CHRISTY, and SS then traveled to Boca Arms where she picked up the firearm she purchased over the weekend. WEBER said that after she left the gun store, CHRISTY and SS noticed that the same vehicles had been following their car for a while, and SS pulled off the highway at Linton Blvd. Once they got to the industrial complex, SS asked her to drive because of he is a convicted felon and they just picked up a firearm. WEBER said she agreed to drive even though she knows her license is suspended and that she has outstanding warrants for her arrest.

17. WEBER told Agents that she had another Glock model 27 with an extended magazine that she kept at her uncle's house. When asked if she would show Agents the Glock, WEBER said that the Glock had been stolen when her uncle's house was burglarized.

18. A search incident to arrest was conducted on the vehicle driven by WEBER. In the trunk of the vehicle, Agents recovered the Glock model 27 .40 caliber pistol that WEBER just picked up from Boca Arms. While searching the trunk, agents recovered a safe that contained the following items: Approximately 3.7 g suspected crack cocaine, approximately 10.7 g suspected black tar heroin, an electronic scale, and a small clear plastic baggie that contained 8-10 additional small clear plastic baggies. Agents recovered a black Jansport backpack from the driver's seat floorboard which contained the following: Rossi .38 caliber revolver, SN W358570, loaded with 4 rounds of .38 caliber ammunition, and a Kahr Arms,

7

9mm pistol, SN YCO239, which was loaded with 5 rounds 9mm ammunition. The backpack contained a digital scale, and numerous personal items to include a toothbrush, a tube of Ambesol, and some tweezers.

19. An NCIC check of the firearms recovered from the backpack indicates that the Kahr Arms 9mm pistol was stolen in April 2013 out of Loxahatchee, Florida.

20. TFO Silva questioned WEBER about the black Jansport backpack, which she claimed was hers. WEBER could not tell TFO Silva any of the personal items that were in the backpack and could not tell TFO Silva how many firearms there were in the bag, but said either two or three. WEBER could not accurately describe the firearms that were recovered from the backpack, describing them as a Glock, a "long black one" and a "gold one" (when there were only two guns in the backpack, a Kahr Arms pistol, and a Rossi revolver). When asked about the electronic scale recovered from the backpack, WEBER said it was hers, for her pot, because "sells her pot to her mom and her friends sometimes." Your affiant notes that a small quantity – described as "nickel bag" – of marijuana was found on WEBER's person in a search incident to arrest.

21. SS was advised of his Miranda rights and was then interviewed by ATF and PBSO Agents. During his interview with TFO Silva, SS stated that earlier that day, he picked up CHRISTY and WEBER from a residence off of Lantana Road so they could pick up the firearm from the gun show. When CHRISTY exited the residence, he was carrying a black Jansport backpack. WEBER then remembered she forgot the receipt for the gun, so she went back inside the residence.

8

CHRISTY borrowed some sandwich bags from SS, and then went back into the residence before returning to the car with WEBER.

22. Once in route to the gun store, SS was driving, CHRISTY was the front passenger, and WEBER was in the back seat. After they arrived to Boca Arms, WEBER went inside, and came back out shortly thereafter. WEBER asked CHRISTY and SS for $15.00 for a processing fee. CHRISTY did not have any money so he asked SS for $20.00 to give to WEBER, which SS agreed to do. WEBER then went inside to complete the transaction. Once she came back out of the store, she handed the Glock in the case through the front passenger window to CHRISTY. CHRISTY removed the zip tie, opened the case and examined the firearm before setting it down near his leg. As they were driving, CHRISTY handed the gun to WEBER.

23. While he was driving, SS felt like there were cars following him so he pulled over into a parking lot. At this time he took the Glock box and put it in the trunk and asked WEBER to drive the car, which she agreed to do. SS told TFO Silva that he has never seen the safe that was recovered from the trunk of his vehicle.

24. John CHRISTY was advised of his Miranda rights and was then interviewed by TFO Silva. During the interview, CHRISTY explained that on Saturday, June 8, 2013, he attended the Palm Beach gun show with his girlfriend, Lindsay WEBER and some of his friends. TFO Silva asked if WEBER had a concealed weapon permit and CHRISTY advised that she did not. TFO Silva asked how many firearms WEBER purchased and Christy informed TFO Silva that WEBER purchased one firearm from a business called the "Tactical Store". CHRISTY

denied giving WEBER any money inside the gun show. TFO Silva asked CHRISTY if he ever handled the Glock that was purchased by WEBER, and CHRISTY stated that he had but that the Glock was "tied down". TFO Silva asked what type of firearm Weber purchased and CHRISTY advised that she purchased a Glock for $600.00, but was unaware of the model. TFO Silva asked CHRISTY if he currently owns any firearms and CHRISTY advised that he is a convicted felon and is, therefore, "not allowed" to possess firearms.

25. Prior to the undercover transaction as Boca Arms described above, your affiant conducted a criminal record check on John CHRISTY and determined the following: On May 23, 2008, CHRISTY was convicted of possession of burglary tools, a felony offense, and burglary of a structure or conveyance, a felony offense. On December 18, 2012, CHRISTY was convicted of sale of marijuana within 1000 feet of a school, a felony offense, and felon in possession of a firearm or ammunition, a felony offense. All of these crimes occurred in the Court of the Fifteenth Judicial Circuit of Florida, and all are punishable by terms of imprisonment exceeding one year.

26. Your affiant has consulted with ATF Resident Agent in Charge (RAC) Robert Shirley who has received extensive training in the manufacture and commerce of firearms, and who has been admitted as an expert witness in the interstate commerce nexus of firearms and ammunition in the United States District Court for the Southern District of Florida. RAC Shirley advised your affiant that Glock firearms, Rossi firearms, and Kahr Arms firearms are not manufactured in the

State of Florida and therefore, by their subsequent presence in the State of Florida, such of necessity traveled and affected interstate commerce.

27. Your affiant knows that the Tactical Store is a federally licensed firearms dealer under the name BZX Investments in Port St Lucie FL. Your affiant also knows that Boca Arms is a federally licensed firearms dealer in Boca Raton, FL.

28. The ATF Form 4473 executed by WEBER on June 8, 2013, at the Palm Beach County Gun Show, and reaffirmed by WEBER as true and accurate on June 14, 2013, at Boca Arms, contains the following questions which are material to the lawfulness of the sale or transfer of a firearm to an individual. Question 2 requires the transferee to provide their "Current Residence Address" and specifically states such "Cannot be a post office box." As stated previously, WEBER provided a "Current Residence Address" of WEBER filled in "1913 Moor Road Lake Worth, FL"; Question 11(a) asks "Are you the actual transferee/buyer of the firearm(s) listed on this form? Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you." WEBER answered this question "Yes;" Question 11(e) asks "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" WEBER answered this question "No." On the basis of the facts set forth above, your affiant submits that WEBER knowingly and intentionally answered each of the foregoing questions falsely.

29. On the basis of the foregoing facts, your affiant submits that probable cause exists to believe John CHRISTY illegally possessed a firearm and ammunition after

being convicted of a crime punishable by a term of imprisonment exceeding on year, in violation of Title 18, United States Code Sections 922(g)(1), 924(a)(2), and 2. Your affiant submits that probable cause exists to charge Lindsay WEBER with the offense of being a drug user in possession of a firearm in violation of Title 18, United States Code Sections 922(g)(3); with Making False Statements in made to a federally firearms licensee in the acquisition of a firearm, and making false statements in records required to be maintained by a federally licensed firearms dealer, and conspiracy to commit said offenses, in violation of Title 18, United States Code, Sections 922(a)(6), 924(a)(2), 924(a)(1)(A), and 371. Your affiant further submits that probable cause exists to charge both John CHRISTY and Lindsay WEBER with Possession of Controlled Substances With Intent to Distribute, in violation Title 21, United States Code, Section 841(a)(1) and

841(b)(1)(C), and Carrying a Firearm in Connection With Drug Trafficking Activity, in violation of Title 18, United States Code, Section 924(c).

FURTHER YOUR AFFIANT SAITH NAUGHT.

_____
SARA CONNORS
SPECIAL AGENT
BUREAU OF ALCOHOL,
TOBACCO, FIREARMS AND
EXPLOSIVES

SWORN TO AND SUBSCRIBED BEFORE
ME THIS DAY 17th DAY OF JUNE, 2013,
AT PALM BEACH COUNTY, FLORIDA.

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.   13-8303-DLB

UNITED STATES OF AMERICA

vs.

JOHN DYLAN CHRISTY, and
LINDSAY PATRICIA WEBER,

Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   _____ Yes   _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes   _X_ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
JOHN C. McMILLAN, JR.
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-6235
Tel: (561) 820-8711
Fax: (561) 820-8777
John.McMillan@usdoj.gov